# EXHIBIT A

**MESSA & ASSOCIATES, P.C.**
**BY:   Joseph L. Messa, Jr., Esquire**
**       Brett M. Furber, Esquire**            **Attorneys for Plaintiff,**
**2000 Academy Dr, Suite 200**
**Mount Laurel, New Jersey 08054**
**(856) 810-9500**

| | | |
|---|---|---|
| **GERARD BRADLEY** | : | **SUPERIOR COURT OF NEW JERSEY** |
| | : | **LAW DIVISION** |
| | : | |
| | : | **MIDDLESEX COUNTY** |
| | : | |
| **Plaintiff,** | : | **DOCKET NO.:** |
| | : | |
| **v.** | : | **COMPLAINT, DESIGNATION OF** |
| | : | **TRIAL COUNSEL, JURY DEMAND,** |
| **POLARIS INDUSTRIES INC;** | | |
| **aka POLARIS INC,** | : | **CERTIFICATION, CERTIFICATION** |
| **FLEMINGTON POWER** | : | **PURSUANT TO RULE 4:5-1** |
| **SPORTS, ABC CORPS. NO 1-10;** | : | **DEMAND FOR INTERROGATORIES** |
| | : | **AND DOCUMENT DEMAND** |
| | : | |
| | : | |
| | : | |
| **Defendants,** | : | |
| | : | |

### COMPLAINT

Plaintiffs, by and through their undersigned counsel, herein complain and demand damages upon the causes of action set forth below:

### I.    INTRODUCTION

1.    This matter involves serious and permanent injuries suffered by Gerard Bradley, who was riding on an all-terrain vehicle (ATV) when the product suddenly, and without warning, cut out resulting in a rollover accident.

2.    The ATV, a 2019 Polaris Sportsman XP1000, was sold to Mr. Bradley by Defendant Flemington Power Sports.

1

3.     The ATV that was designed, manufactured, distributed, marketed, sold, and/or otherwise placed into the stream of commerce by the Defendants contains a number of design and/or manufacturing defects that render it unreasonably dangerous when used in ordinary and foreseeable ways.  These defects include, but are not limited to, Defendants' faulty ignition switch, faulty location of the ignition switch, providing a defective key that allows the vehicle to shut power off while the vehicle is in use.

4.     Though inexpensive and readily available technology exists to eliminate the risk of serious injuries from their ATVs, Defendants intentionally and consciously choose not to utilize it.

5.     Rather, the Defendants willfully exposed the public to the risk of serious injury and death rather than utilizing far safer technology.

6.     The Defendants decided to forgo safer alternative designs for their own economic benefit.

7.     Mr. Bradley is but the latest of the foreseeable victims of the Defendants individual and/or collective decision to expose the general public to their unsafe and dangerous ATV.

## II.     PARTIES AND VENUE

8.     Plaintiff Gerard Bradley is an adult individual residing in Atlantic County.

9.     Defendant Polaris Industries Inc aka Polaris Inc. is, upon information and belief, a Minnesota corporation with a principal place of business at 2100 HWY 55 Medina, Minnesota.

10.     Defendant Flemington Power Sports. is, upon information and belief, a New Jersey corporation with a principal place of business at 300 US-202, Flemington, New Jersey.

11.     Defendant(s) ABC Corp. Nos. 1-10 are business(es), corporations and other jural entities responsible for the security, supervision, operations, oversight, design, manufacture, sales and/or safety of those persons riding on ATVs.

12.     Plaintiffs hereby invoke the doctrines of *respondeat superior* and vicarious liability.

13.     This Court is the proper court of Jurisdiction and Venue because the events and occurrences which form the basis of this Complaint occurred in New Jersey and every defendant named in this lawsuit does business in Middlesex County.

## III.    FACTUAL BACKGROUND

14.     On July 2, 2021 Mr. Bradley was riding his ATV for pleasure in Atlantic County New Jersey.

15.     He had purchased the ATV from Defendant Flemington Power Sports.

16.     While riding the vehicle, at a normal rate of speed, Mr. Bradley's ATV abruptly shut off.

17.     This caused the ATV to lose proper steering ability.

18.     The ATV had plastic grooves that allowed for the key to stick and then power off the vehicle through no fault of its rider.

19.     The ATV flipped over, severely injuring Mr. Bradley.

20.     Mr. Bradley was airlifted to Cooper Hospital in Camden, New Jersey.

21.     His injuries include, but are not limited to, traumatic brain injury, broken ribs, and traumatic pneumothorax resulting in acute respiratory failure.

22.     The ATV he was using was built, designed, and manufactured by Defendant Polaris Inc.

3

23.     Upon information and belief, the Defendants knew or should have known that their ATV's were prone to shutting off or inadvertently switching the ignition into the off position.

24.     As a direct, proximate, and substantial result of Defendants' individual and/or collective negligence, carelessness, recklessness, tortious and/or intentional conduct as herein described, Plaintiff has suffered lost earnings, and may in the future suffer a loss of earnings and/or earnings capacity.

25.     Defendants designed, manufactured, marketed, distributed, and/or sold the ATV at issue.

26.     Defendants failed to incorporate available safety features and/or technology into the design of the ATV.

27.     The subject ATV, which provided no guard or safety measures for its ignition switch, was unreasonably dangerous and defective.

28.     Defendants knew or should have known that faulty ignition switches were the cause of hundreds of injuries.

29.     Despite this knowledge, Defendants failed to provide an adequate guarding and/or safety system, including removing the ignition and placing it in a different location on the ATV.

30.     Defendants' decision to forgo the use of a safer alternative design led directly to the injury suffered by Mr. Bradley.

31.     Had Defendants employed available and safer technology, Mr. Bradley would not have been injured, or the severity of his injury would have been substantially reduced.

32.     At all times relevant herein, Defendants were acting as the agents and employees of each of the other Defendants, and were acting within the scope, purpose, and authority of that agency and employment.

## COUNT I - STRICT LIABILITY
### NEW JERSEY PRODUCTS LIABILITY ACT (DEFECTIVE PRODUCT)
### PLAINTIFF GERARD BRADLEY v. DEFENDANTS POLARIS INDUSTRIES INC. AKA POLARIS INC., FLEMINGTON POWERSPORTS. AND ABC CORPORATIONS, NOS. 1-10

33. The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

34. At the time and place the Defendants distributed and sold the ATV in a defective condition, rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, 2A:58C-2.

35. Defendants at all times pertinent to this Complaint were engaged in the design, testing, manufacture, marketing, development, distribution and sale of goods, in particular, the above-noted ATV.

36. Defendants owed a duty to its users, including Mr. Bradley, that their ATV would be safe and free of defects.

37. Defendants are liable to Plaintiffs under the theory of strict liability, pursuant to applicable law.

38. The subject ATV expected to and did reach users, including Mr. Bradley, without substantial change in the condition in which it was sold.

39. When the ATV left the possession of Defendants, it was in a defective condition creating risk of harm to a user, including Mr. Bradley.

40. The defective condition of the ATV made it unreasonably dangerous for its intended use.

41. Mr. Bradley was a user of the ATV and was unaware of the defective conditions of the ATV.

5

42.     Mr. Bradley used the ATV in a reasonable, foreseeable and intended manner.

43.     At all times material hereto, Defendants' ATV was defective and unreasonably dangerous because the dangerous and unreasonably defective condition of the ATV was unknowable and unacceptable to the average and/or ordinary consumer, such as Mr. Bradley.

44.     At all times material hereto, the Defendants' ATV was defective and unreasonably dangerous because the probability and seriousness of the harm caused by the defective and unreasonably dangerous ATV outweighed the burden or costs of taking precautions.

45.     The ATV failed to perform as safely as an ordinary consumer, such as Mr. Bradley would expect when used in an intended or reasonably foreseeable manner.

46.     The benefits of the design of the Defendants' ATV do not outweigh the risk of danger inherent in such design.

47.     The Defendants could have provided a safer alternative design into the ATV.

48.     Such a safer alternative design existed at the time the Defendants' ATV was manufactured and it would not have substantially impaired the ATV's utility.

49.     Such a safer alternative design was economically and technologically feasible at the time the product left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge.

50.     The defective condition of the above-noted Defendants' ATV includes, *inter alia,* the following deficiencies:

      a.     designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV with a defective ignition;

      b.     designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product;

c.    designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product which lacked the necessary elements to make it safe for use and/or which contained elements that made it unsafe;

d.    failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during operation of the product;

e.    failing to properly inspect or test the product in order to identify and correct any defective or unreasonably dangerous conditions discovered;

f.    creating a significant risk of injury or death during normal and foreseeable use;

g.    designing, equipping and selling the ATV without a guard for the ignition;

h.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in such a way that persons using it would not be appraised of its danger;

i.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in such a way that it would fail to warn users about the power shutting off;

j.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in such a way that made it unsafe for persons using it;

k.    failing to employ appropriate technology, components, devices and/or mechanisms which would have prevented or significantly reduced the risk of injury without impairing the ATV's utility;

l.    failing to supply the ATV which was free of defects and fit and safe in all respects for its intended and foreseeable uses;

m.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in an unsafe condition;

n.    disregarding the safety and well-being of users of the ATV by designing, manufacturing and selling them in an unsafe matter;

o.    disregarding the health, safety and well-being of users of the ATV, including Mr. Bradley, by failing to eliminate, rectify and/or warn of known dangers and defects which involved a substantial likelihood of injury;

p.   failing to provide adequate instructions and warnings covering all known or reasonably foreseeable eventualities;

q.   failing to recall the defective ATV;

r.   failing to recall, broadcast warn, advertise, or repair the design and manufacturing defect of the ATV as detailed here;

s.   failing to adequately identify, investigate, record and incorporate into its design, development, engineering, fabrication, assembly and/or manufacture of the ATV the knowledge gained from prior incidents in which the ATV caused serious injuries to their users despite the exercise of all reasonable and due care;

t.   designing, testing, manufacturing, marketing, distributing, developing, selling, and/or supplying the ATV without a guarding system and/or adequate guarding system for the ignition;

u.   designing, testing, manufacturing, marketing, distributing, developing, selling, and/or supplying the ATV without adequate devices (safe ignition switch) to prevent accidents;

v.   designing, testing, manufacturing, marketing, distributing, developing, selling, and/or supplying the ATV without adequate instructions and warnings;

w.   selling the ATV without all original parts, safety features and equipment, and failing to inspect the ATV before sale to ensure that it contained all original parts, safety features, and equipment;

x.   consciously disregarding the safety consequences of its design decisions, which Defendants knew through prior accidents and litigation could and would result in severe injuries, and choosing to place more importance on its corporate profits than on its products' safety; and

y.   deliberately deciding to not incorporate into the design of the ATV feasible and commercially available alternate designs that would have improved its product's safety and prevented Mr. Bradley's injuries.

51.   At the time Mr. Bradley suffered his severe and disfiguring injuries, the Defendants' ATV was being used in a foreseeable manner and for its foreseeable intended use and purpose.

8

52. The above-noted defects caused Mr. Bradley's severe and disfiguring injuries.

53. The aforesaid incident and Plaintiff's injuries were caused by Defendants designing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in a defective condition for which they are strictly liable to the Plaintiffs.

54. A safer alternative design and/or appropriate warnings was/ were economically and technologically feasible at all times material hereto.

77. As a direct and proximate result of Defendants' conduct noted above, Mr. Bradley was caused to suffer injuries, losses, and damages, including:

    a. Pain and suffering;

    b. Mental anguish;

    c. Loss of earnings and/or earning capacity;

    d. Loss of life's pleasures;

    e. Humiliation;

    f. Embarrassment;

    g. Emotional and psychological trauma; and

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants, jointly and severally, and in accordance with the law of New Jersey, together with punitive damages, interest, costs, attorneys' fees, and any other relief deemed appropriate, just and proper by the Court.

**COUNT II - STRICT LIABILITY**
**NEW JERSEY PRODUCTS LIABILITY ACT (MANUFACTURING DEFECT)**
**PLAINTIFF GERARD BRADLEY v. DEFENDANTS POLARIS INDUSTRIES INC.**
**AKA POLARIS INC., FLEMINGTON POWERSPORTS. AND ABC**
**CORPORATIONS, NOS. 1-10**

9

78. The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

79. At the time and place the Defendants distributed and sold the ATV, it contained a manufacturing defect rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of New Jersey Products Liability Act, 2A:58C-2.

80. Defendants at all times pertinent to this Complaint were engaged in the design, testing, manufacturing, marketing, development, distribution and sale of goods, in particular, the above-noted ATV.

81. Defendants owed a duty to its users, including Mr. Bradley, that their product would be safe and free of defects.

82. Defendants are liable to Plaintiffs under the theory of strict liability pursuant to applicable law.

83. The subject ATV expected to, and did reach users, including Mr. Bradley without substantial change in the condition in which it was sold.

84. When the ATV left the possession of Defendants, it was in a defective condition creating risk of harm to a user, including Mr. Bradley.

85. The defective condition of the ATV made it unreasonably dangerous for its intended use.

86. Mr. Bradley was a user of the ATV and was unaware of the defective conditions of the ATV.

87. Mr. Bradley used the ATV in a reasonable, foreseeable and intended manner.

88. At all times material hereto, Defendants' ATV was defective and unreasonably dangerous because the dangerous and unreasonably defective condition of the ATV was unknowable and unacceptable to the average and/or ordinary consumer, such as Mr. Bradley.

89. At all times material hereto, the Defendants' ATV was defective and unreasonably dangerous because the probability and seriousness of the harm caused by the defective and unreasonably dangerous ATV outweighed the burden or costs of taking precautions.

90. The ATV failed to perform safely, as an ordinary consumer such as Mr. Bradley would expect when used in an intended or reasonably foreseeable manner.

91. The benefits of the design of the Defendants' ATV do not outweigh the risk of danger inherent in such design.

92. The Defendants could have provided a safer alternative design for the ATV.

93. Such a safer alternative design existed at the time the Defendants' ATVwas manufactured and it would not have substantially impaired the ATV's utility.

94. Such a safer alternative design was economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge, at the time the product left the control of the Defendants.

95. The defective condition of the above-noted Defendants' ATVincludes, *inter alia,* the following deficiencies:

      a.      designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV with a faulty ignition switch;

      b.      designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product;

      c.      designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product which lacked the necessary elements to make it safe for use and/or which contained elements that made it unsafe;

d.    failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during operation of the Product;

e.    failing to properly inspect or test the product in order to identify and correct any defective or unreasonably dangerous conditions discovered;

f.    creating a significant risk of injury or death during normal and foreseeable use;

g.    designing, equipping and selling the ATV without a guard for the ignition switch;

h.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in such a way that persons using it would not be appraised of its danger;

i.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in such a way that it would fail to warn users about unintentional lane changes;

j.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in such a way that made it unsafe for persons using it;

k.    failing to supply the ATV which was free of defects and fit and safe in all respects for its intended and foreseeable uses;

l.    designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in an unsafe condition;

m.    disregarding the safety and well-being of users of the ATV by designing, manufacturing and selling them in an unsafe matter;

n.    disregarding the health, safety and well-being of users of the ATV, including Mr. Bradley, by failing to eliminate, rectify and/or warn of known dangers and defects which involved a substantial likelihood of injury;

o.    failing to provide adequate instructions and warnings covering all known or reasonably foreseeable eventualities;

p.    failing to recall the defective ATV;

12

q.  failing to recall, broadcast warn, advertise, or repair the design and manufacturing defect of the ATV as detailed here;

s.  failing to adequately identify, investigate, record and incorporate into its design, development, engineering, fabrication, assembly and/or manufacture of the ATV the knowledge gained from prior incidents in which the ATV caused serious injuries to their users despite the exercise of all reasonable and due care;

u.  designing, testing, manufacturing, marketing, distributing, developing, selling, and/or supplying the ATV without adequate devices prevent accidents;

v.  designing, testing, manufacturing, marketing, distributing, developing, selling, and/or supplying the ATV without adequate instructions and warnings;

w.  selling the ATV without all original parts, safety features and equipment, and failing to inspect the ATV before sale to ensure that it contained all original parts, safety features, and equipment;

x.  consciously disregarding the safety consequences of its design decisions, which Defendants knew through prior accidents and litigation could and would result in severe injuries, and choosing to place more importance on its corporate profits than on its products' safety; and

y.  deliberately deciding to not incorporate into the design of the ATV feasible and commercially available alternate designs that would have improved its product's safety and prevented Mr. Bradley's injuries.

96.  At the time Mr. Bradley suffered his severe and disfiguring injuries, the Defendants' ATV was being used in a foreseeable manner and for its foreseeable intended use and purpose.

97.  The above-noted defects caused Mr. Bradley's severe and disfiguring injuries.

98.  The aforesaid incident and Plaintiff's injuries were caused by Defendants' designing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV in a defective condition for which they are strictly liable to the Plaintiffs.

13

99.   Defendants further had actual knowledge of the means of designing and/or manufacturing such a ATV which would not have caused Mr. Bradley's injuries in the manner described above.

100.   As a direct and proximate result of Defendants' conduct noted above, Mr. Bradley was caused to suffer injuries, losses, and damages, including:

  a.   Pain and suffering;

  b.   Mental anguish;

  c.   Loss of earnings and/or earning capacity;

  d.   Loss of life's pleasures;

  e.   Humiliation;

  f.   Embarrassment;

  g.   Emotional and psychological trauma.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants, jointly and severally, and in accordance with the law of New Jersey, together with punitive damages, interest, costs, attorneys' fees, and any other relief deemed appropriate, just and proper by the Court.

**COUNT III - STRICT LIABILITY
NEW JERSEY PRODUCTS LIABILITY ACT (FAILURE TO WARN)
PLAINTIFF GERARD BRADLEY v. DEFENDANTS POLARIS INDUSTRIES INC.
AKA POLARIS INC., FLEMINGTON POWERSPORTS. AND ABC
CORPORATIONS, NOS. 1-10**

103.   The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

104. Defendants are strictly liable for the injuries and damages suffered by Plaintiffs as a result of the misrepresentations by Defendants in selling the ATV pursuant to the provisions of the New Jersey Products Liability Act, 2A:58C-2.

105. Defendants are strictly liable for the injuries and damages suffered by Mr. Bradley as a result of the misrepresentations by Defendants in selling the ATV insofar that the ATV was defectively advertised, labeled, marketed, distributed, and/or sold by the defendants so as to render it unreasonably dangerous to Mr. Bradley and others similarly situated.

106. At all times material hereto, Defendants misrepresented the safety and efficacy of the ATV in their conduct, advertising, marketing, packaging, and/or other literature associated with this product, which Mr. Bradley relied on in using the ATV.

107. The warnings and instructions that accompanied the ATV were inadequate warnings to uses and/or the general public, including Mr. Bradley about the risks of injury caused by the ATV.

108. Defendants failure to warn included, but were not limited to:

   a. their failure to warn that the ATV could cause serious injuries, including disfigurement;

   b. their failure to warn of the dangers of the ATV;

   c. their failure to warn that the ATV lacked a safety mechanism, guard, safeguard, device, mechanism, to prevent the ignition from switching off;

   d. their failure to warn that the ATV could shut off inadvertently mid use;

   e. failure to warn that the ignition was unreasonably dangerous to riders;

   f. their failure to warn that the ATV could cause serious injuries; and

   g. their failure to warn the ATV could be unsafe.

109. These marketing defects were some of the producing causes of Mr. Bradley's injuries.

110. A safer alternative design and/or appropriate warnings would have prevented or significantly reduced the risk of Mr. Bradley's injuries, without substantially impairing the utility of the ATV.

111. A safer alternative design and/or appropriate warnings was/were economically and technologically feasible at all times material hereto.

112. As a direct and proximate result of Defendants' conduct noted above, Mr. Bradley was caused to suffer injuries, losses, and damages, including:

   a. Pain and suffering;

   b. Mental anguish;

   c. Loss of earnings and/or earning capacity;

   d. Loss of life's pleasures;

   e. Humiliation;

   f. Embarrassment;

   g. Emotional and psychological trauma.

   **WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants, jointly and severally, and in accordance with the law of New Jersey, together with punitive damages, interest, costs, attorneys' fees, and any other relief deemed appropriate, just and proper by the Court.

**COUNT IV - BREACH OF WARRANTIES**

16

**PLAINTIFF GERARD BRADLEY v. DEFENDANTS POLARIS INDUSTRIES INC.
AKA POLARIS INC., FLEMINGTON POWERSPORTS. AND ABC
CORPORATIONS, NOS. 1-10**

113.   The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

114.   Mr. Bradley was a member of a class of persons who use the ATV which was designed, sold and distributed by Defendants.

115.   In designing, manufacturing, marketing, distributing, selling and/or supplying the ATV, Defendants expressly warranted that the ATV was safe for its intended and foreseeable uses and made other express warranties concerning the quality and characteristics of it.

116.   In designing, manufacturing, marketing, distributing, selling and/or supplying the ATV, Defendants warranted that the ATV was of merchantable quality, was fit and safe for the ordinary and particular purpose for which it was sold, and was free of all defects.

117.   Defendants breached these express and implied warranties because the ATV constituted a serious danger to users, was not safe for its intended or foreseeable uses, was not of merchantable quality, was not fit and safe for the ordinary purposes for which it was sold and was not free from all defects.

118.   The Defendants' ATV was unfit, unsafe, not merchantable, and not fit for its particular purpose, for reasons that include but are not limited to:

    a.   designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV with a faulty ignition switch;

    b.   designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product;

    c.   designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product which lacked the necessary elements to make it safe for use and/or which contained elements that made it unsafe;

17

d.   failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during operation of the Product;

e.   failing to properly inspect or test the product in order to identify and correct any defective or unreasonably dangerous conditions discovered;

f.   creating a significant risk of injury or death during normal and foreseeable use;

119.   As a direct and proximate result of Defendants conduct noted above, Mr. Bradley was caused to suffer injuries, losses, and damages, including:

a.   Pain and suffering;

b.   Mental Anguish;

c.   Loss of earnings and/or earning capacity;

d.   Loss of life's pleasures;

e.   Humiliation;

f.   Embarrassment;

g.   Emotional and psychological trauma

**WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against the Defendants, jointly and severally, and in accordance with the law of New Jersey, together with punitive damages, interest, costs, attorneys' fees, and any other relief deemed appropriate, just and proper by the Court.

**COUNT V - NEGLIGENCE**

18

**PLAINTIFF GERARD BRADLEY v. DEFENDANTS POLARIS INDUSTRIES INC.
AKA POLARIS INC., FLEMINGTON POWERSPORTS. AND ABC
CORPORATIONS, NOS. 1-10**

120.   The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

121.   Defendants owed a duty to design, manufacture, market, distribute, sell and/or supply products in such a way so as to avoid harm to persons using them, such as Plaintiff.

122.   Defendants breached this duty.

123.   Defendants owed a duty to warn of the hazards and dangers associated with the use of their products, so as to avoid harm to persons using them, such as Plaintiff.

124.   Defendants breached this duty.

125.   A safer alternative design of the ATV was available to Defendants and in all reasonable probability, the same product could have been designed/manufactured/sold with appropriate technology, component, device and/or mechanism which would have prevented or significantly reduced the risk of injury without impairing the ATV's utility.

126.   The cost of correctly designing the ATV to eliminate the defects was economically and technologically feasible at the time the product left the control of the Defendants.

127.   Defendants knew or should have known that their ATVs were unreasonably dangerous without adequate safeguards, warnings, and/or instructions.

128.   Defendants had actual knowledge of the means of designing safer and effective ATVs, which would have prevented Plaintiff's injuries.

129.   Defendants, acting by and through its authorized parents, divisions, subsidiaries, agents, servants, successors, assigns and/or employees, were negligent, careless and reckless in

19

designing, testing, manufacturing, marketing, distributing, selling and/or supplying the ATV, both generally and in the following particular respects:

    a.    negligently designing, testing, manufacturing, marketing, distributing, developing, selling and/or supplying the ATV with a faulty ignition switch;

    b.    designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product;

    c.    designing, manufacturing, distributing, supplying and/or selling a defective and unreasonably dangerous product which lacked the necessary elements to make it safe for use and/or which contained elements that made it unsafe;

    d.    failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during operation of the Product;

    e.    failing to properly inspect or test the product in order to identify and correct any defective or unreasonably dangerous conditions discovered;

    f.    malfunctioning during normal and foreseeable use;

    g.    negligently designing, equipping and selling the ATV without an appropriate guard system for the ignition switch;

130.    As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Defendants as set forth above, Mr. Bradley was caused to suffer injuries, losses, and damages, including:

    a.   Pain and suffering;

    b.   Mental anguish;

    c.   Loss of earnings and/or earning capacity;

    d.   Loss of life's pleasures;

    e.   Humiliation;

    f.   Embarrassment;

    g.   Emotional and psychological trauma.

131. As a direct and proximate result of the negligence, recklessness, and/or carelessness of the Defendants, Mr. Bradley was caused to suffer injuries, losses, and damages as set forth above.

**WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against the Defendants, jointly and severally, and in accordance with the law of New Jersey, together with punitive damages, interest, costs, attorneys' fees, and any other relief deemed appropriate just and proper by the Court.

Respectfully submitted,

**MESSA & ASSOCIATES, P.C.**

By: /s/ *Brett Furber*
Joseph L. Messa, Jr., Esquire
Brett Furber, Esquire
Attorneys for Plaintiff

Dated: June 29, 2023

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE, that pursuant to Rule 4:25-4, Joseph L. Messa, Jr., Esquire and Brett Furber, Esquire are hereby designated as trial counsel in the aforementioned litigation on behalf of the law firm of Messa & Associates, P.C.

**MESSA & ASSOCIATES, P.C.**

By:     /s/ *Brett Furber*
        Joseph L. Messa, Jr., Esquire
        Brett Furber, Esquire
        Attorneys for Plaintiff

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

**MESSA & ASSOCIATES, P.C.**

By:     /s/ *Brett Furber*
        Joseph L. Messa, Jr., Esquire
        Brett Furber, Esquire
        Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned hereby certifies that to my knowledge at this time, the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding and no other action or arbitration proceeding is contemplated.  The undersigned further certifies that at this time no party needs to be joined.

**MESSA & ASSOCIATES, P.C.**

By:    */s/ Brett Furber*
Joseph L. Messa, Jr., Esquire
Brett Furber, Esquire
Attorneys for Plaintiff

## CERTIFICATION

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**MESSA & ASSOCIATES, P.C.**

By:    */s/ Brett Furber*
Joseph L. Messa, Jr., Esquire
Brett Furber, Esquire
Attorneys for Plaintiff

23

## INTERROGATORY DEMAND

Plaintiffs hereby demand Answers to Uniform Interrogatories from each and every Defendant, and Supplemental Interrogatories as may be propounded in accordance with R. 4:17-1, within sixty (60) days of receipt of said Complaint.

**MESSA & ASSOCIATES, P.C.**

By:  */s/ Brett Furber*
Joseph L. Messa, Jr., Esquire
Brett Furber, Esquire
Attorneys for Plaintiff

## NOTICE TO PRODUCE

1.     The entire claims and investigation file or files including but not limited to daily activity sheets, claims notes, diary sheets, and status sheets of any insurance adjuster(s) and/or risk employee(s)/manager(s), internal memoranda regarding this claim created, sent and/or received by any insurance adjuster(s) or other adjuster(s), risk employee(s)/manager(s) and/or by the Defendants or an agent(s)/employee(s) of the Defendants, communications to and from all insurance carriers, parties, Defendants, or potential parties, request(s) for investigation, and/or reports/findings of investigators, both in-house and/or independent and/or all insurance policies of the Defendants, excluding references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting strategy or tactics and privileged communications from counsel.

2.     All statements and communications of any and all witnesses including any and all statements of Plaintiffs and Defendants, including taped recordings, whether transcribed or not, as

well as all written statements, excluding those protected by privilege.

3.      Any documents, records or communications of or prepared by the investigator(s) acquired as a result of their investigation(s), including but not limited to telephone calls, correspondence, facsimiles, e-mail, billing, inspections or observations, interviews, statements and/or findings.

4.      Any and all documents and communications containing the name and home and business addresses of all individuals contacted as potential witnesses.

5.      Reports, manuals, textbooks, policy sheets, communications, and/or documents prepared by any and all experts who will testify at trial.

6.      Resumes of any and all experts who will testify at trial.

7.      Copies of any and all photographs, diagrams, drawings, charts, models, movie films or videotapes which relate, refer or pertain to Plaintiffs, any other party to this action, the incident site, surveillance, and/or any instrumentality involved in the incident described in Plaintiffs' Complaint.

8.      Any and all documents and communications substantiating and/or undermining any defense to Plaintiffs' cause of action.

9.      Copies of any and all reports and records prepared by any physician, hospital or healthcare provider who has examined Plaintiffs, excluding those actually provided by counsel for Plaintiffs.

10.     Central indexing information on Plaintiffs for this accident, prior accident(s), and subsequent accident(s).

11.     Verification of the policy limits for liability insurance and any "umbrella" or excess insurance, including a copy of the policy, including applicable policy declarations page.

12.    Copies of internal memoranda, inter-office memos, facsimiles, e-mail or other documents or communications regarding this claim, made by the Defendants and/or any agent(s) and/or employee(s) of Defendant, or their insurance carrier(s).

13.    Any and all reports, communications and/or documents prepared by Defendants or their employee(s)/agent(s) containing the facts, circumstances and causes of this alleged accident.

14.    Any and all documents of any nature whatsoever which refer in any way to the incident described in Plaintiffs' Complaint and/or the facts or circumstances leading up to and following said incident.

15.    All property damage estimates rendered for any object belonging to the Plaintiffs and/or Defendants which were involved in this alleged accident.

16.    Any and all documents or other tangible materials of any nature whatsoever which you will use at any deposition in this case.

17.    Any and/or all documents or communications of any nature whatsoever which relate, refer or pertain to Plaintiffs, any other party to this action, the incident, incident site and/or any instrumentality involved in the incident described in Plaintiffs' Complaint.

18.    All documents and/or communications relating to any facts on the basis of which it is asserted that the conduct of the Plaintiffs contributed to the happenings of the alleged occurrence or to the alleged injuries or losses suffered allegedly as a result of this accident.

19.    Any and all documents of any nature whatsoever referred to in Defendants' Answers to Plaintiffs' Interrogatories.

20.    All trial exhibits.

21.    All documents obtained via Subpoena.

22.    Any and all memos, notes, analysis and/or any other non-privileged document

which discusses the incident and/or cause of the subject incident.

23. Any and all documents relating to any injuries resulting from ignition shutoffs or ignition failures.

24. Any and all complaints, reports, lawsuits or customer service calls relating to any injuries sustained from ignition failures or shutoffs.

25. Any and all tests, reports or analyses done in response to incidents/accidents in which injuries were sustained from ignition shutoffs and failures.

26. Any and all documents related to any design, review or testing of placing the ignition switch on another location of the ATV.

<strong>MESSA & ASSOCIATES, P.C.</strong>

By: */s/ Brett Furber*
Joseph L. Messa, Jr., Esquire
Brett Furber, Esquire
Attorneys for Plaintiff

Dated: June 29, 2023

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-003671-23

**Case Caption:** BRADLEY GERARD  VS POLARIS INDUSTRIES I NC.

**Case Initiation Date:** 06/29/2023

**Attorney Name:** BRETT MC PHERSON FURBER

**Firm Name:** MESSA & ASSOCIATES

**Address:** 123 S 22ND ST
PHILADELPHIA PA 19103

**Phone:** 2155683500

**Name of Party:** PLAINTIFF : BRADLEY, GERARD

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: GERARD BRADLEY? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/29/2023                                              /s/ BRETT MC PHERSON FURBER
Dated                                                               Signed